ELIZA GILBERT v. JEANNETTE EDWARDS ET AL.

Decided May 14, 1903.

**1.—Marriage of Slaves.**

A marriage between slaves, after the custom of slaves, was in law a nullity unless ratified upon emancipation by mutual recognition of the relation.

**2.—Same—Ratification—Common Law Marriage.**

A common law marriage, although an indirect result of a prior slave marriage, was a new contract, and not a ratification of the slave marriage, where the parties were separated years before emancipation and had each had a subsequent slave marriage to another and, although living in the same county, did not enter into the common law marriage until years after emancipation.

**3.—Same—Legitimation of Issue.**

Such common law marriage, however, had the effect of legitimatizing the issue of the former slave marriage.

**4.—Community Property—Proof Not Showing.**

Evidence considered and held not sufficient to show that certain property, acquired by the husband before marriage, became community property by virtue of being paid for after marriage, the proof not showing when it was paid for.

Appeal from the District Court of Liberty. Tried below before Hon. L. B. Hightower.

*Hugh Jackson,* for appellant.

*E. B. Pickett, Jr.,* for appellees.

GILL, ASSOCIATE JUSTICE.—Caesar and Jeannette Chapman were slaves of different masters in the State of Louisiana, and with the consent of their masters married each other according to the custom of slaves. Thereafter they were separated by their masters, Jeanette being brought to Texas some years prior to the Civil war. She had borne a child to Caesar, which was brought to Texas with her. This child's name was Terrazine. After Jeannette left Louisiana, Caesar lived with a slave woman named Mary until her death. She also bore him children. Thereafter he was brought to Liberty County, Texas, and lived with his master near the town of Liberty. Jeannette was also living near the same town.

After the separation of Caesar and Jeannette the latter lived with a slave named Gilbert, and bore him a son named Simon. The latter married, but died without issue. His wife Eliza is the appellant.

Some time after emancipation Caesar, recognizing Terrazine as his daughter, had her to come and live with him. Thereafter, in 1872, he bought a small lot from a Miss Stanwood. Some time later he bought adjoining property known as the "Gleich Place," and upon these two purchases he moved and lived with his daughter. Thereafter, at the solicitation of his daughter, he sent for his slave wife, Jeannette, and

they lived together as man and wife until the death of Caesar. This cohabitation was such as to constitute a common law marriage.

After the death of Caesar, Jeannette, his surviving wife, deeded the property to her son Simon Gilbert. Jeannette's death preceded that of her son Simon. She died in 1890.

Terrazine, the daughter of Jeannette and Caesar, died prior to the death of Caesar. Her heirs, Jeannette Edwards and Terrazine and Alice Perkins, have brought this suit to recover the property owned and occupied by Caesar at his death. They claim it as the heirs of Terrazine, his only legitimate child.

George Chapman and W. E. Chambers were made defendants. Eliza Gilbert, the surviving wife of Simon Gilbert, intervened, claiming the property by inheritance from her deceased husband, who died leaving no other heir.

Upon hearing the above facts at the trial the court instructed the jury to return a verdict for the plaintiffs, which was accordingly done. From a judgment upon that verdict the intervener alone has appealed.

Under appropriate assignments of error appellant assails the action of the trial court on the grounds: (1) That the common law marriage of Caesar and Jeannette after emancipation related back to the slave marriage. The property thus became community property, and the deed to Simon Gilbert had the effect to convey to him her community half interest. (2) The evidence of purchase by Caesar before marriage with Jeannette was not undisputed, and the court erred in assuming the property was his separate estate. (3) If purchased before the common law marriage, it was not paid for until after, and to the extent of the purchase money paid after marriage, it was community property, and the court erred in not submitting the issue.

The slave marriage between Caesar and Jeannette was in law a nullity unless ratified upon emancipation by mutual recognition of the relation. In this case they were separated years before emancipation. The wife became the concubine, or else the slave wife, of Gilbert. The husband cohabited with the slave Mary, and perhaps others. Though they lived in the same county in Texas after the close of the war, they did not cohabit, nor were their relations in any way resumed, until 1873 or later. It is plain there is no ratification of the slave marriage. The common law marriage, while manifestly an indirect result of their original relations, was nevertheless a new contract. They became husband and wife by force of their agreement to become such and by actually assuming the relation. That such a marriage is valid, is no longer an open question in this State. This marriage legitimatized the issue of their former relation.

These things being true, the court rightly directed a verdict for the plaintiffs, unless the evidence otherwise presented the issue of community estate. We are of opinion the issue is not presented. Some of the witnesses testified that Caesar bought the property in controversy,

moved on it, lived thereon with his child, and finished paying for the property before he sent for his wife. This stands in the record uncontradicted, unless the statement of another to the effect that Jeannette Chapman was sent for "soon after" the purchase of the Stanwood place amounts to a contradiction. We do not think it does, for this witness admits that she did not know when Jeannette moved to Caesar's house. She was sure it was after the purchase of the first place, and does not say it was before the purchase of the second.

The case stands thus: · Upon Caesar's death his surviving wife became entitled to a life estate in the property. This was the most that could pass by her deed to her son Gilbert. Her death terminated that interest and the property reverted to the lawful heirs of Caesar Chapman. The trial court so adjudged.

Because we have found no error in the record, the judgment is affirmed.

*Affirmed.*

Writ of error refused.