## MRS. ADDIE MILLER V. I. G. YATES ET AL.

No. 5480.    Decided May 13, 1933.
(61 S. W., 2d Series, 767.)

*Boyle, Wheeler, Gresham & Terrell,* for plaintiff in error.

Miller, appellant's predecessor in title, having located valid land certificates on vacant unappropriated land subject thereto, and having caused to be returned to the General Land Office field notes covering such location together with field notes of the alternate surveys for the State and together with the original land certificates all within the time and in the manner provided by law, Miller thereby acquired a good and valid title and a vested right to the land thus located, and the Court of Civil Appeals erred in holding that Miller was bound by the acceptance of patents to a less quantity of land, when such acceptance was induced by the misrepresentation of the agents of the State arising out of mutual mistake of fact, and the court further erred in holding that appellant could not, when the true facts became known, assert any right to the land embraced in the original field notes but excluded by the so-called corrected field notes. McGimpsey v. Ramsdale, 3 Texas, 344; Article 3898, Revised Statutes, 1879; Dikes v. Miller, 24 Texas, 417; Hamilton v. Avery, 20 Texas, 612; Duren v. H. & T. C. Ry. Co., 86 Texas, 287; Snider v. Methvin, 60 Texas, 487; Articles 3887, 3888, 3890, 3958, 3966, Revised Statutes, 1879; Adams v. Houston & T. C. Ry., 70 Texas, 252; Seibert v. Richardson, 86 Texas, 295; Allen v. West Lumber Co., 244 S. W., 499; 1 R. C. L., 1, 4 and 5; 1 C. J., sec. 8, page 7; Blum v. H. & T. C. Ry. Co., 31 S. W., 526; M. K. & T. Ry. Co. v. Hendricks, 108 S. W., 745; Texas & Pacific Ry. Co. v. Thompson, 65 Texas, 186; Barron v. Henry (Supreme Ct.), 15 S. W., 221; Morrill v. Bartlett, 58 Texas, 644; Smith v. Sublett, 28 Texas, 163; Magee v. Chadoin, 30 Texas, 644; Fears v. Albea, 69 Texas, 437; Moore v. United Elkhorn Mines, 64 Or., 342, 127 Pac., 967; Oviatt v. Big Four Mining Co., 39 Or., 118, 65 Pac., 812.

The Court of Civil Appeals erred in holding that Miller, by his acceptance of the patents issued upon the corrected field notes lost all right to the land sued for when the undisputed evidence shows that such patents were accepted through mutual mistake of fact, and Miller having bought and paid for the land in controversy and being only deprived thereof by the mutual mistake of fact and the misrepresentation of the State that the land in controversy was in conflict with a prior location, when it later developed that the land in controversy was not in conflict, such land belonged to Miller, and the agents of the State had no legal right to award it to another, and the Court of Civil Appeals erred in holding that by Miller's acceptance of the patents under those circumstances he lost all

right to the land sued for. In addition to authorities above cited: Whitman v. Rhomberg, 25 S. W., 451; Creswell Ranche & Cattle Co. v. Waldstein, 28 S. W., 260.

The Court of Civil Appeals erred in holding that the peremptory charge in favor of defendants was properly given by the trial court, because the defendants wholly failed to present any defense entitling them to defeat plaintiff's recovery in this cause, there being no evidence introduced upon which the court could properly reach the conclusion that either plaintiff's testator or plaintiff had either waived or abandoned their rights to the land in controversy, and all of the defenses urged by defendants were and are without standing in law and were and are insufficient to defeat plaintiff's recovery. Burleson v. Burleson, 28 Texas, 383; Bynum v. Preston, 69 Texas, 287; Stanley v. Schwalby, 85 Texas, 351; Wortham v. Thompson, 81 Texas, 348; 16 S. W., 1059; Green v. Priddy, 112 Texas, 567, 250 S. W., 656; Moore v. Carey Bros. Oil Co., 246 S. W., 1083, 248 S. W., 470, 269 S. W., 75, 272 S. W., 440; Whitman v. Rhomberg, 25 S. W., 451; Creswell Ranche & Cattle Co. v. Waldstein, 28 S. W., 260.

*Hill, Smith & Neil,* of San Angelo, and *John Rogers,* of Tulsa, Okla., for defendants in error.

A locator who files corrected field notes, excluding therefrom acreage embraced within his original field notes, in order to get a patent cannot claim that he did not act voluntarily or was led to do so by a mutual mistake of fact on the part of himself and the Land Commissioner as to the actual existence of such excluded acreage since by mandamus he could have compelled the approval of his field notes or by trespass to try title or a boundary action against the holders of the adjacent senior locations he could have established that the entire area within his original field notes was outside of and not embraced within the boundaries of such adjacent senior locations. Montgomery County v. Angier, 32 Texas Civ. App., 451, 74 S. W., 957; Jones v. Petty (Civ. App.), 146 S. W., 663; Garcia v. State (Civ. App.), 274 S. W., 319; Sullivan v. State, 41 Texas Civ. App., 89, 95 S. W., 645; Hamilton v. State (Civ. App.), 152 S. W., 1117; U. S. v. Roselius, 15 How., 31, 14 L. Ed., 587; Arguello v. U. S., 18 How., 546, 15 L. ed., 478.

*R. J. Randolph,* of Austin, as amicus curiae.

MR. JUSTICE GREENWOOD delivered the opinion of the court.

In determining this writ of error, it will suffice to use the statement of the nature and result and the statement of the facts of this case from the opinion of the Court of Civil Appeals, which are adopted by plaintiff in error, in language as follows:

"This is an action in trespass to try title and for damages brought by appellant, Mrs. Addie Miller, surviving wife and devisee of M. C. Miller, who died in 1915, against I. G. Yates and others holding oil and gas leases under Yates.

"Upon peremptory charge there was a verdict and judgment for defendants.

"The land sued for is in two tracts, each being approximately 625 varas wide from north to south, and 1,900 varas long.

"On March 15, 1882, certificates numbered 2302 and 2303, for 640 acres each, were issued to the Texas Central Railway Company under the provisions of chapter 12, tit. 84, R. S. 1879. By transfer dated April 8, 1882, filed in the General Land Office April 13, 1894, these certificates were transferred to 'M. C. Miller, Trustee, heirs or assigns.'

"By application for survey filed with the county surveyor of Pecos county on February 11, 1887, Miller located the certificates upon vacant land lying between the Runnels county school land on the north and block 194, G. C. & S. F. Ry. survey on the south. The land was surveyed by O. W. Williams, deputy surveyor of Pecos county, on February 16, 1887. The field notes, with the application for the survey and certificates, were filed in the General Land Office March 3, 1887. The surveys were numbered 101, 102, 103, and 104, Nos. 102 and 104, being the alternate school sections reserved to the state. Each survey contained 640 acres, was in square form, each boundary line being 1,900 varas long. The N. W. corner of survey 101 was fixed at the southwest corner of the Runnels county school land, from which corner its lines ran east, south, west and north to the beginning. The succeeding surveys were constructed to the east upon 101.

"According to the testimony of the surveyor, Williams, the Land Office claimed the surveys were in conflict with block 194 on the south, refused to patent on that account, and required corrected field notes, which he prepared September 16, 1892, filed in the General Land Office March 3, 1893.

"S. C. Clark, chief draftsman of the General Land Office, testified in part as follows:

" 'The original of this map appears to have been in use in

this office as the official map of Pecos County prior to the map of 1895. From an examination and consideration of such map which was then on file in the General Land Office and in use by that department at the time of the filing of the original field notes to said sections 101 and 103 under certificates 2302 and 2303, T. C. Ry. Co. in Pecos County, it does not appear that the entire area lying between the Runnels County School Land and Block 194, G. C. & S. F. Ry. Co., was sufficient in extent to permit the location of the two surveys of 640 acres each in accordance with the original field notes made up and filed in the Land Office to satisfy the two certificates mentioned.'

"And further:

" 'In canceling the original field notes covering both sections of land mentioned, and the issuing of patents to M. C. Miller as assignee of the T. C. Ry. Co. on each certificate for 407 acres, known as sections 101 and 103, Pecos County, and based upon corrected field notes—the Land Office maps or plats on file at the time indicate or show that the corrected field notes covered the entire space between the south line of the Runnels County School Land and Block 194, G. C. & S. F. Ry. Co., causing the south line of sections 101, 102, 103 and 104, T. C. Ry. Co., to appear to be the same as the north line of Block 194, G. C. & S. F. Ry Co., and to their extent said lines were made to appear as coinciding with said north line of Block 194.' 'The official map referred to in direct interrogatory No. 7 bears no date, but appears to have superseded the old map of Pecos County dated 1873, and was in use up to 1895, when it was superseded by the map of Pecos County of that date. I do not know of any correction of the official map referred to, except that it was superseded by a new map compiled in 1895.'

"The only material difference between the original and corrected field notes is that the east and west boundary lines in the corrected notes are 1,209 varas long instead of 1,900 varas as in the original.

"The original field notes of surveys 101 and 102, as they now appear in the Land Office, upon their face, bear this indorsement, 'Canceled by corrected notes,' and the original field notes of surveys 103 and 104, upon their face, bear the indorsement, 'Canceled by corrected field notes.' The Commissioner of the General Land Office, Hon. J. T. Robison, testified these indorsements were in the handwriting of Ernest Von Rosenberg, then draftsman in the Land Office.

"Upon the corrected field notes patents to surveys 101 and

103 were issued April 14, 1894, to M. C. Miller, 'assignee of the Texas Central R. R. his heirs or assigns.'

"On November 28, 1896, M. C. Miller conveyed to the City National Bank of Austin, Tex.; among other lands, 407 acres known as survey 101, block 194, being patent No. 77, vol. 109, and 407 acres known as survey 103, block 194, being patent No. 78, vol. 109.

"The omitted portions off of the south ends of survey 101 and survey 103, as originally located and surveyed, constitute the two tracts of land in controversy. At the time the original location was made and up until about 1919 the Land Office Maps and records showed only a sufficient strip of land north and south, between the Runnels county school land on the north and block 194 on the south, to accommodate the four surveys of 407 acres each. However, as a matter of fact there was sufficient vacant, unappropriated land between the Runnels county school land and block 194 to accommodate the four surveys of 640 acres each as originally located and surveyed.

"This fact, however, was not known to the Land Office until about 1919, as a result of investigation and survey by Capt. Dod, state surveyor. There is nothing in the record to show that either the Commissioner of the General Land Office or M. C. Miller were aware of the true facts during M. C. Miller's lifetime. When the two patents were issued there was indorsed across the face of each original certificate the following: '407 acres. Patented April 14, 1894. W. L. McGaughey.' It was shown that W. L. McGaughey was the Commissioner of the General Land Office at the time. The two certificates remained in the Land Office, and no certificate for unlocated balance was taken out.

"Upon the facts disclosed by Capt. Dod's survey, Yates applied to purchase as vacant the land lying between the south line of the land patented to Miller and the north line of block 194. It was sold and awarded to him February 4, 1921, by the Commissioner of the General Land Office, without condition of settlement, and patent issued April 13th, 1927." 15 S. W. (2d) 730.

█ A careful study of the record, aided by excellent briefs and arguments on each side, convinces us that the judgments of the District Court and Court of Civil Appeals were correct, unless we were willing to overrule a long line of decisions of this Court. We find no fault with those decisions. To overrule them would unsettle innumerable land titles throughout Texas, producing incalculable confusion and disaster.

The case is decided when we reaffirm the soundness of the principle that the assignee of a land certificate loses all title or claim to so much land as may be included in an original file and survey thereunder as is without the limits of a corrected survey on which such assignee accepts a patent.

The proposition urged by plaintiff in error as controlling here is thus stated in her brief in the Supreme Court as follows:

"The Court of Civil Appeals erred in holding that the peremptory charge in favor of defendants was properly given by the trial court, because Miller, having located valid certificates upon the land in controversy and having seasonably complied with all provisions of the law at that time in effect, acquired a good and valid title to the land in controversy and a vested right therein, and this record failing to show any act or deed whereby such title was divested out of Miller, plaintiff, Miller's successor in title, was entitled to recover herein as prayed for by her, and the Court of Civil Appeals erred in holding that the peremptory charge against her was properly given by the trial court.

"Miller being without knowledge of the true facts, the Court of Civil Appeals erred in holding that acquiescence by him in the so-called correction of field notes and acceptance of patents thereunder precluded Miller and those claiming under him from asserting any rights to the land in controversy."

██ The law charged Miller with knowledge of all material facts which he must have known had he elected to avail himself of his statutory right to ascertain the correctness of the Land Office sketches and map. Having elected not to avail himself of his statutory right, but having in effect represented to the Land Office by presentation of the corrected field notes that he no longer asserted claim or title to anything without the bounds of the corrected survey, his rights thereafter were precisely the same as though the file and surveys had stood from the beginning as corrected.

The authorities cited by plaintiff in error as to the nature of the title acquired by location and survey under a valid land certificate have no application to an area after the time such area is taken out of such location and survey by due correction of the field notes of the survey.

Articles 3918, 3919 and 3920 R. S. of 1879, in force when the surveys for Miller were made, plainly imposed the duty on the Commissioner of the General Land Office to cause the surveyor or the party at interest to furnish corrected field notes when incorrect field notes, according to the current archives of

the General Land Office, were presented to the Commissioner. The statutes likewise made it the duty of the surveyor, at the instance of the Commissioner or of the interested party, to make any needed corrections, provided, however, *"when a conflict of surveys does not exist on the ground, but appears only on the maps or in the field notes,* it shall only be required of the surveyor to make an official certificate of the facts and furnish *a true sketch of the survey, with its corrections."* Certainly nothing could be further from the intent of these statutes than for the interested party to be allowed to either furnish corrected field notes, conforming to the Land Office archives, or to acquiesce in a surveyor's corrected field notes, and then to be permitted to subsequently assert title to that to which he had thus plainly disclaimed further title, after adverse interests had been lawfully acquired. The only reason Miller failed to acquire title to more acreage was because he failed or refused to cause the true facts on the ground to be ascertained and certified to the Land Office, with appropriate field notes and sketch. He lost the area in dispute simply because he chose for reasons satisfactory to himself, whether from notions of economy or otherwise, to surrender his claim to area excluded by the corrected field notes. This conclusion is inescapable from his acceptance of patent on such field notes.

Miller's actual knowledge or his intent in procuring patent on the corrected field notes is of no moment. Upon this point the decision of Austin v. Dungan, 46 Texas, 244, is conclusive. Speaking of a similar claim to that of plaintiff in error asserted by another Miller in the case cited, the Court said:

"The last survey was evidently received and acted on in the office, as the corrected survey of the land which Miller desired to appropriate by his certificate at that time. Whatever may have been Miller's purpose and intention, it cannot be held that the first of these surveys can be regarded as a subsisting and continuing appropriation of the entire land after he applied for and obtained the patent upon this resurvey; * * *

"The idea which seems to be conveyed in the charge of the court, that if the certificate and field notes of the original survey were in the land office when the land became vacant, and Miller had not intended to abandon, but still insisted on his right to the land, he would be entitled to it, was unquestionably erroneous, and calculated to mislead the jury.

"The resurvey and patent of a part of the land was a presumptive relinquishment by Miller to that part of it not embraced in the resurvey. A subsequent appropriation of it should

be initiated by a file, location, or survey in the county surveyor's office, and not by indicating a claim to it in the General Land Office. If there were no adverse claimant, plaintiffs would have to cause a survey of it to be made by the county surveyor, and the field notes recorded and returned to the General Land Office, before he could get a patent."

As said by Mr. Justice Pleasants, speaking for the Galveston Court of Civil Appeals, in a case wherein writ of error was refused, styled Montgomery County v. Angier, 32 Texas Civ. App., 451, 74 S. W., 959: "Plaintiff testified that he did not intend to abandon his claim to the land in controversy by filing corrected field notes of the John Heyser survey and obtaining a patent thereon which did not include the land in controversy, but this is immaterial. The effect of the filing of the corrected field notes and the issuance of a patent thereon at the request of plaintiff was to cancel the original field notes, and thus annul the only title under which plaintiff claimed the land in controversy, and this result was accomplished regardless of plaintiff's intention."

In Dikes v. Miller, 24 Texas, 417, a grant was made of one-fourth of a league of land, on May 1, 1831, by the Commissioner of DeWitt's colony to Byron Wickson, who on the 3rd of June, 1843, released same to the Republic of Texas, in consideration that subsequent to his grant he had obtained title from the government of Mexico to a league as his headright. Thereafter Wickson undertook to make a conveyance of his one-fourth league, under which the plaintiff Dikes claimed the land as against Miller, who claimed to have procured a patent under location subsequent to Wickson's release.

After discussing whether or not the relinquishment to the Republic of Texas was valid, upon which the justices did not care to express a definite opinion, the court declared:

"It will be sufficient for the decision of this case, if, by the act of relinquishment the grantee lost the title, whether it was re-acquired by the government, as lands conveyed to the state, or became derelict, or in whatever manner, since the plaintiff can recover only upon the strength of his own title. Easements and incorporeal rights annexed to land, may be lost *by abandonment. So may an incipient right to land, as a location and survey,* or other merely equitable title, not perfected into a grant, or vested by deed."

There is such a clear and able discussion of the authorities in the opinion of Mr. Justice Higgins in this case (15 S. W. (2d) 732 to 734) that we deem it unnecessary to further pro-

long this opinion than to briefly refer to two other decisions. In the case of Forbes v. Withers, 71 Texas 302, 9 S. W., 154, the points decided by the Supreme Court were briefly summarized in Reporter Terrell's headnotes as follows:

"The file indicates where the survey should be made. The survey is evidenced or certified by the field notes, which are recorded and transmitted to the land office, to be included in the patent for the land.

"The laws afforded a means to compel the surveys to be made in accordance with a legal file. If a survey does not conform to the file, and no means are taken to correct the survey by the certificate holder or others interested in the land included, such survey when matured into a patent fixes the right of the land, regardless of whether made in accordance with the file or location of the certificate."

In the opinion, Associate Justice Walker stated:

"The action of the surveyor is presumed to be proper and the presumption can not be disputed after the surveys have matured into patents. Hence the inquiry as to what lands are granted by the patent is directed to the survey *as made,* and not as it should have been made by the surveyor. *The file becomes immaterial, save as it may throw light upon the actual survey.* (26 Texas, 68)." 71 Texas, 306.

As late as 1922, this Court in an opinion on rehearing by Mr. Justice Pierson recognizes the correctness of the doctrine announced in the earlier cases in holding:

"The respondent Land Commissioner devotes practically all of his argument in his motion for rehearing upon the proposition that the issuance of a patent precludes the patentee from claiming any land from the State not included in his patent. He states it as follows:

" 'When the purchaser has had prepared correct field notes, pays for the land and calls for his patent and accepts it, for 160 acres, he cannot, afterwards, obtain any additional land by reason of his application to purchase, being bound by the patent.'

"As a proposition of law this is correct. Title passes out of the State and vests in the grantee upon the issuance and acceptance of the patent, *and is conclusive as to the extent of claim the grantee has under his contract of purchase, both as to the limitation of acreage as described in the patent* and as to any claim to excess in the survey." Anderson v. Robison, 111 Texas, 408.

■ We conclude that the effect of filing the corrected field notes

and of accepting the patent thereon was the loss by M. C. Miller of any claim or interest in the land sued for. Having failed to prove her title as plaintiff in the district court, the peremptory charge against plaintiff in error was correct.

The judgments of the District Court and of the Court of Civil Appeals are therefore affirmed.