Leonard C. PROCTOR et al., Appellants,

v.

T. M. MARKHAM et al., Appellees.

No. 5002.

Court of Civil Appeals of Texas.

El Paso.

July 23, 1954.

Rehearing Denied Sept. 22, 1954.

Stubbeman, McRae & Sealy, Midland, Perkins, German, Mims & Bell, Midland, Turner, Rodger, Winn, Scurlock & Terry, Dallas, Dillard Baker, Houston, L. A. Thompson, Tulsa, Okl. of counsel, for appellants.

Sedberry & Williams, San Angelo, for appellee, Dierschke.

John Ben Shepperd, Atty. Gen., Thomas Black, J. Arthur Sandlin, Asst. Atty. Gen., for appellees.

HAMILTON, Chief Justice.

This is a vacancy suit involving two tracts of land located one entirely in Reagan County and one partly in Reagan County and partly in Glasscock County. Suit was filed on March 8, 1952, pursuant to Art. 5421c, Section 6(j), Vernon's Ann. Civil Statutes of Texas, to set aside the action of the Commissioner of the General Land Office made on February 18, 1952, awarding as alleged vacancies to T. M. Markham as assignee of James C. Wilson, Jr., two tracts of land described as tracts "A" and "B" in plaintiff's petition. Tract "A" contains 24.-86 acres and tract "B" contains 38.15 acres.

The case was tried before the court without a jury, and the court entered its judgment affirming the vacancy award made by the Commissioner on the two tracts, and denying plaintiffs and intervenors any relief in their suit to set aside the award and to have it removed as a cloud on their title. Findings of fact and conclusions of law were not requested by any of the parties and none were filed by the court. Prior to the trial of the suit the vacancy applicant, T. M. Markham, filed a disclaimer. Norman J. Dierschke, owner of the surface in Section 19, Block 35, Township 5 South, filed a good faith claimant's application to purchase tract "B" and joined the State in urging the establishment of a vacancy on that tract. Otherwise the suit was between the State of Texas in favor of the vacancy and the other parties, plaintiffs, intervenors, and defendants opposing the vacancy. Appeal was duly perfected from the trial court's judgment of June 6, 1953, and his action establishing the two tracts as vacancies, and is now before this court for review.

1-A

**Tract 'B' in Plaintiff's Petition is shown by letters A-B-C-D**
**Tract 'A' in Plaintiff's Petition is shown by letters E-F-G-H**

Tract "A" is a part of Section 37, Block 37, Township 5 South, as originally surveyed by the T. & P. surveyors and as originally granted to the T. & P. Railway by the State of Texas (see map area E.F. G.H.). Tract "B" is a part of Section 24, Block 37, Township 5 South, as originally surveyed by the T. & P. surveyors for the school fund, sold by the State of Texas to M. R. House, Jr. on June 16, 1904. (See map area A.B.C.D.). The outside lines of Blocks 36 and 37, Township 5 South, were surveyed on the ground in January of 1876 by a Texas & Pacific surveyor named W. C. Powell. On this original survey he ran from north to south along the line between Blocks 36 and 37. For some reason Powell re-ran this block line in April of the same year, this time running from the opposite direction. Certain of the original rock mounds called for on each run are still in place. Field notes were than prepared for all of the sections within above blocks in this Township 5 South. Those in Block 36 are all dated Jan. 25, 1876, those in Block 37 are all dated April 17, 1876. In this particular Township 5 South the original field notes for the tiers of sections immediately east of the common line between Blocks 36 and 37 and immediately to the west of that line call for common objects at all mile and half mile points along the eight mile points along the eight mile stretch of the line for its entire eight miles. Not only was it a common line as described in the field notes but it was also a common line on the ground where W. C. Powell had made his April run, in other words it appears W. C. Powell abandoned the January run and used the April 17 run for his block line between Blocks 36 and 37. The April line, which was official, was approximately 100 varas east of the January line.

In 1909 a surveyor named Robert E. Estes purported to make a resurvey of certain sections located in the south end of Block 37, Township 5 South. The only evidence concerning his employment for this job is a letter from the Commissioner of the General Land Office dated March 16, 1909, which reads as follows:

"March 16, 1909.

Mr. Robert E. Estes,
County Surveyor,
Midland, Texas.

Dear Sir:

Pursuant to a conversation I had with you in this office, on the 13th instant, in regard to Block Nos. 37, 38 and 39, Township No. 5 South, T & P Ry. Co. situated in Midland, Upton and Reagan Counties, I beg to advise you that the individual sections in these blocks have not been patented, and that under Chapter 90 of the act of the 21st Legislature, approved March 29, 1889, all excesses in the sections in these blocks are donated to the public free school fund.

You having expressed your willingness to re-survey those three blocks in Township No. 5, under my directions, I will, therefore, instruct you to, first, survey the outside boundaries of each block in Township No. 5, and identify all original corners possible. From the block boundaries construct the sections, by giving to each individual section 640 acres, and to the common school section the excess that would otherwise fall to the individual by maintaining the regular block form. Should instances occur where, on account of improvements, this plan of disposing of the excess would be detrimental to the owner you may use your judgment in placing the excess.

When you have resurveyed this land and prepared corrected field notes, I suggest that you send them, together with a complete plat on tracing cloth, made to scale of 2,000 varas to an inch, to this office, to be examined. Should they meet with my approval, I will return them to be recorded in your office, and you may again send them here to be filed.

It will be necessary for the future identification of the surveys to establish on the ground at least two corners to

each one. That would necessitate the surveying of alternate lines throughout the block.

I am returning to you, under separate cover, your plat upon which field note calls have been noted.

Yours truly,
Commissioner."

After making the survey as requested in the above letter, Robert E. Estes returned corrected field notes for Block 37 which includes Section 24 involved in this lawsuit. On April 2, 1909, Estes certified to his plat showing how he had carried out his instructions, such certificate being as follows, to-wit:

"I, Robert E. Estes, County Surveyor of Midland County, do hereby certify that the hereon sketch, with the limits, boundaries and corners correctly set forth, was compiled from data of a survey made by me upon the ground, and based upon the remaining evidences of the original surveys. This 2nd day of April, 1909.

Robert E. Estes, Surveyor,
Midland County, Texas."

Said plat shows the east line of Section 24 to be the same as the east line of Block 37—in other words, the plat filed by Estes did not show any vacancy. Estes did show that Section 24 upon the resurvey contained 646¾ acres, or an excess of 6¾ acres. It appears to be uncontradicted that what Estes actually did was that he used the old January 1876 run of W. C. Powell for the east line of Section 24 instead of the April run field notes, which were filed in the General Land Office. It is evident that Estes was never aware of his mistake in this matter in view of the plat which he filed showing the east line of Section 24 to be in the west block line of Block 36, or the east block line of Block 37. Apparently the Commissioner was not aware of the error made by Estes because his plat does not reveal any discrepancy in the east line of Section 24 and the east block line of Block 37. When Estes filed his field notes and plat from his 1909 resurvey the Land Com-

missioner or someone in his office marked the original field notes "cancelled".

It appears that there has been a fence running close to the east line of Section 24 as resurveyed by Estes. This fence has been in existence for over 25 years.

It is agreed by all parties that the statute under which Mr. Estes made his resurvey was Chapter 90 of the Acts of the 21st Legislature, which is as follows:

"An Act to provide for the ascertainment, distribution, and sale of the excesses in surveys of land made for the school fund, and to validate surveys of land as herein provided.

"Section 1. Be it enacted by the Legislature of the State of Texas: That all surveys and blocks of surveys heretofore made by virtue of valid alternate scrip be and the same are hereby declared to segregate from the mass of the public domain all the land embraced in said surveys, or blocks of surveys, as evidenced by the corners and lines of same, or by calls for natural or artificial objects, or the calls for the corners and boundaries of other surveys or by the maps and other records in the general land office.

"Sec. 2. That all excess in said surveys or blocks of surveys are hereby donated and declared to belong to the public free school fund of the state; and it shall be the duty of the commissioner of the general land office to ascertain, by any and all means practicable, the existence and extent of such excesses, and to provide for and direct such surveys, or corrected surveys, as may be necessary for this purpose: Provided, That where such surveys were made in blocks of two or more surveys, said respective surveys shall remain on the ground consecutively as placed therein, as shown by the maps, sketches, and field notes originally returned to the general land office: Provided, That the person who has already purchased, or who may hereafter purchase from the state, the particular

section to which surplus shall by such resurvey by made contiguous, shall have the prior right for the period of six months after such resurvey shall have been made, in which to purchase such excess on the same terms on which such purchaser has already bought or may buy.

"Sec. 3. That all such surveys which under the direction of the commissioner of the general land office have been or may be hereafter corrected, so that all excess in the original surveys shall be placed in the surveys belonging to the public free schools, are hereby validated, and the action of the commissioner is hereby ratified; and he is directed and authorized to issue patents to the owners thereof, and to sell such surveys belonging to the public free schools, securing to the state the benefit of such excesses.

"Sec. 4. That the provisions of this act shall not apply to nor affect the rights of the third persons heretofore acquired in good faith.

"Sec. 5. Provided, That nothing in this act shall apply to any lands for which patents have been issued.

"Sec. 6. Whereas there is much confusion and uncertainty in regard to certain lands surveyed in this state, and the rights of actual settlers and purchasers are dependent upon the validity of such surveys, creates an emergency and an imperative public necessity authorizing the suspension of the constitutional rule requiring bills to be read on three several days, and demanding that this act take effect and be in force from and after its passage, and it is so enacted.

"Approved March 22, 1889."

On July 20, 1891, the State of Texas instituted suit against Canda, Drake and Strauss, the then owners of Texas and Pacific lands in Texas for some 3,285,337 acres of land in Texas. Included in said land sued for was Section 37, Township 5 S, Block 37, Tom Green County, of which Reagan County was a part at that time. The defendants answered, and in cross action set up claim to the fee simple title to said Section 37. Judgment was entered January 22, 1893, awarding certain lands to the State, and among other lands, awarded the legal and equitable title to said Section 37 to defendants, and further the judgment provided that the State take nothing as to all lands sued for except the land awarded to the state. In 1928, at the request of the owner of Section 37, Township 5 S, Block 37, R. E. Estes made a resurvey of said section. It is undisputed that Mr. Estes ran his east line of Section 37 along the line run by Mr. Powell in January of 1876, which as shown above is 100 varas west of the block line between Blocks 36 and 37, or the west line of Section 32, Block 36. The field notes of Mr. Estes were filed in the Land Office and at the request of the owners of such Section 36 a patent was issued on the basis of Mr. Estes' corrected field notes.

With reference to the above facts as they concern Section 24, the State and Intervenor Dierschke contend that appellants have by allowing the Estes corrected field notes to remain on file all these years without doing anything about it, and by allowing the fence to stand along Estes' east line of said survey for so many years, are now estopped to claim any right to tract "B": and the tract is vacant land.

Appellees also contend that when Estes made his resurvey on instructions from the Commissioner of the General Land Office, and filed his field notes leaving out of Section 24 said Tract "B", that appellants and their predecessors in title had six months within which to purchase the acreage left out, and they having failed to exercise their option, lost their prior rights of purchase.

Appellees rely upon the case of Miller v. Yates, 122 Tex. 435, 61 S.W.2d 767, 770 and the cases there cited. In that case two sections of land were involved. The original field notes filed called for 640 acres, each being in a square of 1900 varas on each side. M. C. Miller, the owner,

applied to the Land Commissioner for patents on said sections on the original field notes. The Commissioner refused to grant the patents on said field notes because according to his maps there was a conflict with another survey, and required Miller to file corrected field notes cutting down said sections to 407 acres each. Miller requested patents to issue on the corrected field notes which he filed, and patents were issued accordingly. Subsequently it was discovered that the land that had been cut out of the two sections by the new survey was vacant land and was not in any other survey, and I. G. Yates and others applied to purchase said land as vacant land. It was sold and awarded to him by the Commissioner. Ida Miller, the surviving wife of M. C. Miller, brought suit in trespass to try title against Yates and others for title to said lands. The Supreme Court in its opinion held:

"We conclude that the effect of filing the corrected field notes and of accepting the patent thereon was the loss by M. C. Miller of any claim or interest in the land sued for."

The cases cited in said opinion base their decisions first on abandonment, relinquishment, acquiescence, and intervention rights of third parties. However, the facts were similar in that claimant of the land filed corrected field notes or caused them to be filed, and had accepted patents thereon. These facts are entirely different from the facts in the case at hand and we do not believe that the case is in point. The appellants in this case at the most have allowed the field notes filed by Estes in 1909 to remain on file without having them corrected, and have allowed a fence to stand along the east line of survey 24 for many years. No overt acts by appellants and their predecessors in title are alleged or proved. We think that before the rule as laid down in Miller v. Yates, supra, would apply, the appellant must have requested and received a patent on said Estes field notes. This has not been done, and we hold that they have not lost any rights they had under the original field notes.

The case most nearly in point with the facts in this case is Carmichal v. Standard Oil & Gas Co., 256 S.W.2d 129, wr. ref. In that case it was held that where the claimant had file no corrected field notes and had not requested and received a patent on the corrected field notes, the doctrine of estoppel had no application, and that claimant lost none of his rights under the field notes on which he had made his application. The fact that the Land Commissioner had filed corrected field notes and marked the original field notes as cancelled made no difference.

The allowing of the fence to remain along the Estes east line of Survey 24 we do not believe is material, for the reason that as between the State and an individual, long acquiescence in a boundary line is not the same as between two individuals. Humble Oil & Refining Co. v. State, Tex.Civ. App., 162 S.W.2d 119, 134; Weatherly v. Jackson, 123 Tex. 213, 71 S.W.2d 259.

Concerning appellee's proposition that Tract "B" of Section 24 was excess land, set aside contiguous to Section 24, and that appellants and their predecessors in title having failed to purchase said land within six months after the survey had lost their right to purchase same. As shown in the letter above, written to Mr. Estes requesting the resurvey, the Commissioner authorized Estes to determine the amount of excess in each individual R. R. section and to place all of the excess in adjoining school sections. The filing of the Estes field notes and plat shows that he attempted to do that very thing. His plat showed the east line of Section 24 to be in the block line between Blocks 36 and 37. Even had the appellants gone to the Land Office within the six months period after the survey was made, and looked at the file, they would not have been able to determine that there was any excess acreage taken out of Section 24 and set aside contiguous to it. They therefore could not have made any application to purchase such excess acreage because there was no survey on file showing of what said excess consisted. The Inter-

venor, Norman J. Dierschke, did not file his application to purchase said land on field notes of the Estes survey, but he filed it upon field notes of a survey made and filed by Byron Simpson in 1951. The fact that Estes through error failed to include the tract in question in the corrected field notes which he filed on said Section 24, it does not necessarily follow that he set such tract apart as excess acreage contiguous to said Section 24. While the statute set out in full above under which the survey was made does not say how the segregation of the excess acreage should be accomplished, one thing is certain, Estes failed to described such excess acreage in his field notes and failed to determine the amount of such excess acreage which we hold would be necessary for him to do in order to comply with the purpose of the statute referred to. We therefore hold that appellants lost no rights by the filing of said field notes by Estes. State v. Robinson, 119 Tex. 302, 30 S.W.2d 292–297; Gulf Oil Corp. v. Outlaw, 136 Tex. 281, 150 S.W.2d 777.

The State maintains that as to Tract "A" which is out of Survey 37, Block 37, as described by the original field notes on file in the land office, the land is vacant land because the owner had filed corrected field notes as prepared by R. E. Estes, requested and received patent from the state based upon said field notes. They base their proposition on the holding in Miller v. Yates, supra. Appellant counters with the proposition that the doctrine laid down in Miller v. Yates does not apply to the facts in this case, because the state had no title whatsoever to said Section 37 at the time said corrected field notes were filed and patent requested and accepted, by virtue of the State having lost all of its title in and to said section in a lawsuit styled State of Texas v. Canda, Drake & Strauss, in the District Court of Travis County, No. 10,351,

wherein a "take nothing" judgment was entered against the State insofar as said Section 37 is concerned.

 Under the authority of Permian Oil Co. v. Smith, 129 Tex. 413, 73 S.W.2d 490, 107 S.W.2d 564, 111 A.L.R. 1152, we hold that the "take nothing" judgment against the state as to title and possession of said Section 37, which includes tract "A" in dispute, divested all title out of the state and put it in the predecessors in title of appellants.

 Now the next question is what effect would the filing of the corrected field notes and accepting a patent thereon have with reference to title to Tract "A" which was excluded from said field notes in the patent. We do not believe that the doctrine announced in Miller v. Yates, supra, applies, because in that case the claimants did not have legal title to it. The State held the legal title at the time the corrected field notes were filed and patent issued, while in this case the state had no title whatever. Cases in Texas holding that legal title may not be abandoned are numerous. Dikes v. Miller, 24 Tex. 417; Sideck v. Duran, 67 Tex. 256, 3 S.W. 264; W. T. Waggoner Estate v. Sigler Oil Co., Tex.Com.App., 284 S.W. 921; Harris v. O'Connor, Tex. Civ.App., 185 S.W.2d 993, wr. ref. We therefore hold that appellants Fraser, Burr and Oliphant by filing corrected field notes and accepting the patent on the part of Section 37, Block 37, as described in the original field notes on file in the Land Office, did not lose title to that part of said section not included in the patent, and that no vacancy was created by such acts.

We reverse and render the judgment of the trial court as to both tracts "A" and "B".

FRASER, J., not participating.