Bangs *v.* Scidmore.

---

BANGS, receiver, &c. *vs.* SCIDMORE.

Where the act incorporating a mutual insurance company declared that all persons who should insure with the corporation should thereby become members thereof, during the period they should remain so insured, and no longer; *Held,* that the fair interpretation of this provision was that persons insured by the company should respectively remain members of the corporation during the time their policies, by their terms, were to continue; and that such membership would not be terminated by a total loss of the property insured. SMITH, J., dissented.

It was accordingly *held,* that a premium note, given by a person, on becoming a member of a corporation, was liable to assessment, during the life of the policy, although the property insured had been destroyed by fire before the assessment was made.

THIS action was brought by the plaintiff as receiver of the property and effects of the Genesee Mutual Insurance Company, to recover the amount of a premium note given by the defendant to said company, which note was in the words and figures following:

"$420. For value received in policy No. 5265, dated November 20th, 1847, issued by the Genesee Mutual Insurance Company, I promise to pay the said company, or their treasurer for the time being, the sum of four hundred and twenty dollars, in such portions and at such times as the said company may, agreeably to their act of incorporation, require. .

WM. E. SCIDMORE."

On the trial before Justice T. R. STRONG, at the Monroe circuit, in January, 1856, the plaintiff proved that the Genesee Mutual Insurance Company was duly incorporated by an act of the legislature of this state, on the 3d day of May, 1836, and the corporation was duly organized the first day of June, 1836, in the village of Le Roy, in the county of Genesee. That the plaintiff was duly appointed receiver of the property and effects of said corporation on the 7th day of October, 1851. That on the 20th day of November, 1847, the plaintiff became insured upon his steam saw mill, by the said Genesee Mutual Insurance Company, by policy No. 5265, in the sum of $1500, and at the same time gave his note, of which the above is a copy. That on the 16th day of June, 1852, the plaintiff, under the direction of the supreme court, made an assessment upon the premium notes then held by him as such receiver, and among the notes so held, was the note above mentioned of the defendant, and upon which the plaintiff, as such receiver, assessed the defendant the sum of $139.78, the proportion of the losses and incidental expenses which accrued to the said insurance company after the first day of August, 1848, and which sum was the proportion according to the amount of the defendant's premium note, and that the plaintiff, as such receiver, required the payment of the said assessment of $139.78, by the defendant, and gave the defendant the requisite notice, as prescribed by the statute and by-laws of the company in such case ; and rested.

The defendant gave in evidence the policy of insurance referred to above, which recited that the defendant had become a member of said company and had secured to the company the sum of $420, being the deposit or premium for insuring the sum of $1500, &c. on the said steam saw-mill, during the term

of five years, commencing at noon on the 20th day of November, 1847, and ending at noon on the 20th day of November, 1852. The policy then contained provisions for insuring the property described, for the consideration aforesaid, in said sum of $1500, against loss or damage by fire during the period aforesaid. The defendant also proved, that on the 1st day of May, 1848, the property insured was wholly destroyed by fire, and that on the first day of August, 1848, the said company paid to the defendant the whole amount of insurance, deducting from the amount thereof the defendant's proportion of all losses and incidental expenses that had occurred and had been incurred by the company, up to that time.

The defendant's counsel contended that the defendant was not liable upon his premium note. That after the first day of August, 1848, the defendant ceased to be a member of said corporation, and thereby ceased to be responsible for any losses that the company might sustain. The justice overruled the position of the defendant's counsel, and directed a judgment in favor of the plaintiff for $362.75, being the balance of the premium note; and judgment was entered accordingly. The defendant's counsel duly excepted to the rulings of the judge. This is an appeal from that judgment.

*S. B. Jewett,* for the appellant.

*S. Mathews,* for the respondent.

WELLES, J. The act incorporating the Genesee Mutual Insurance Company, was passed May 3d, 1836. (*Sess. Laws of 1836, ch.* 241.) By section 3 of that act it was declared, that the corporation thereby created should possess all the powers and privileges, and be subject to all the restrictions and limitations which were granted to, or imposed upon, " The Jefferson County Mutual Insurance Company" by the act incorporating that company, passed March 8th, 1836. (*Id. ch.* 41.) By the 2d section of the last mentioned act, all persons who should thereafter insure with the corporation, should thereby become

members thereof, *during the period they should remain so insured, and no longer.* The 8th section of the same act provides that every member of the company shall be bound to pay for losses, &c. in proportion to the deposit note. The section then declares that the buildings insured, and the right, title and interest of the assured to the lands on which they stand, shall be pledged to the company, which shall have a lien thereon in the nature of a mortgage, to the amount of the deposit note, *which shall continue during his policy;* such lien to take effect whenever the company shall file and have entered, &c. a memorandum of the name of the individual insured, a description of the property, the amount of the deposit note, and the term for which the policy shall continue. The position taken by the defendant is, that upon the destruction of the insured property, and the payment, by the company, of the insurance, he no longer remained a member of the company or liable to contribute to any losses, &c. that might thereafter occur, although the time for which the policy was issued had not expired. The substance of the argument is, that when the property was destroyed, the risk was at an end, and with it the relation of assurers and assured between the parties; and that upon the termination of such relation, the defendant, by force of the 2d section of the act, ceased to be a member of the corporation; and as, by the 8th section, none but members of the corporation are liable to pay for losses, &c., and the defendant, for the above reason, not being such member, is not liable for losses, &c. arising after he so ceased to be a member of the company. Upon a careful examination and consideration, however, of the foregoing, with other sections of the act, I am satisfied that such was not the intention of the legislature.

In the first place, it should be remembered that by the express terms of this contract of insurance, the liability of the parties was continuous, running through five years. That of the plaintiffs was onerous upon them, in proportion to the time during which the policy, by its terms, was to continue. Upon the general principles of insurance, they could afford to take the risk for one year only, at just one-fifth of the premium

Bangs *v.* Scidmore.

that they could afford to take it for five years, and in the same proportion for a longer or shorter period. There may be considerations which would justify taking risks for long periods at premiums less in proportion than for short periods; such, for example, as getting a larger amount of capital pledged in deposit notes, securing the patronage of the assured for a longer period, saving the expense of new .policies, &c.; but none which affect the principle stated. The actual risk, as a general rule, is increased, upon a given piece of property, exactly in proportion to the time it is to continue. In this respect, there is no difference between mutual insurance and stock companies. It would therefore be manifestly unequal and inequitable to release the defendant from his engagement, before the expiration of the time which, by the terms of his undertaking, it was to continue, because the contingency has happened, which was to render absolute the plaintiff's liability, to the utmost extent which the contract contemplated. It would be, in effect, to release the defendant from a portion of his obligation, when the whole of it was the consideration of the plaintiffs' engagement, because the latter have performed, to the last extremity, the whole obligation . to which, by the terms of their contract, they could in any event be subjected. The injustice of such construction is illustrated by supposing a company to consist of 100 members, each of whom has an insurance of $1000 for five years; all taken at the same time, and each having given a deposit note for $1000. A total loss happens to one of the members at the end of one week from the commencement of the five years. The members pay this loss by a contribution of $10 each. Immediately afterwards another member sustains a total loss, which, according to the defendant's argument, must be paid by the remaining 99 members. Suppose like losses continue to occur at short intervals, until they amount, in the aggregate, to a sum sufficient to exhaust the whole amount of deposit notes, which, on the principle contended for, remain in force. A computation will demonstrate that when 64 such losses should be paid, to say nothing about expenses, the whole capital of $100,000, being the total

amount of the original deposit notes, would be used up, and the policies of the remaining 36 members entirely worthless. The case supposed is a strong and plain one, but it shows the workings of the rule contended for, more or less palpably in every case; and exhibits a scheme any thing but mutual or equitable.

If it should be said that the 11th section of the act contains provisions for making good losses after the amount collectable on the deposit notes is exhausted, the answer is, in the first place, that such provision is liable to be entirely inadequate, and would always be found less prompt and advantageous to the sufferer than a direct resort to the capital secured by deposit notes. But, in the second place, the conclusive answer is, that the assessment thereby authorized, is to be on the *members of the company*, who, according to the defendant's argument, are only those who remain insured, and do not include such persons as have sustained total losses. But the act under which this company was incorporated, upon a fair interpretation, and a comparison of its several sections, will not be found to lead to any such unreasonable result, as, it seems to me, the defendant's position tends to establish.

By section 6, every person becoming a member of the corporation, by effecting insurance therein, shall, before he receives his policy, deposit his promissory note for such sum as the directors shall determine, a part, not exceeding five per cent thereof, to be immediately paid; *and the remainder of the note shall be payable, in part or the whole, at any time* when the directors shall deem the same requisite for the payment of losses by fire, and such incidental expenses as shall be necessary for transacting the business of the company; *and at the expiration of the term of insurance*, the said note, or such part of the same as shall remain unpaid, after deducting all losses and expenses occurring *during said term*, shall be given up to the maker thereof. The words " *term of insurance*," evidently refer to the term of time for which, by the policy, the insurance shall continue. They will certainly bear such construction

without violating their ordinary and popular sense, and this is what, I have no doubt, the legislature intended.

The 7th and 11th sections contain provisions by which persons insured may terminate their liability to contribute to the payment of losses, before the expiration of the time for which they are insured. By section 7, it may be done by alienating the property insured; and by section 11, by payment of the whole of the deposit note and surrendering the policy before any subsequent loss or expense has occurred. There is nothing else to be found in the act, providing for or contemplating the termination of the liability of a member or person who becomes insured, prior to the expiration of the time for which, by the terms of his policy, the insurance is to continue. This circumstance adds force to the argument in favor of the continued liability of a member during the whole time for which he became insured.

In this and most, if not all, mutual insurance companies, every person insured becomes a corporator, with stock in the corporation, to the amount of his deposit note. These notes constitute the capital stock of the company, upon which to rely for the payment of losses and expenses; and the members have no right to withdraw themselves, or the stock thus held by them, from the company, before the time for that purpose provided in their contract of insurance, except in the two cases provided in sections 7 and 11, before referred to.

By the 10th section of the act under consideration, if a member neglects the payment of an assessment for thirty days after notice, the directors may sue for and recover the whole amount of his deposit note or notes with costs, and the amount thus collected shall remain in the treasury of the company, subject to the payment of such losses and expenses as have accrued or may thereafter accrue; and the balance, if any remain, shall be returned to the party from whom it was collected, on demand, after thirty days from the expiration of the term for which insurance was made. These provisions are inconsistent with the idea of a termination of the liability of the maker of a deposit note, upon a total loss being sustained by him. By the de-

fendant's theory, the individual, the whole amount of whose deposit note had been collected under the above 10th section, should be entitled to have his money thus collected, or such part of it as was not applicable to the payment of losses and expenses then accrued, refunded, whenever the property, embraced in his policy, should be totally destroyed. But that would be a plain violation of the section last referred to. The case of *Wilson* v. *The Trumbull Mut. Fire Ins. Co.* (7 *Harris' Penn. R.* 372,) is cited and relied upon by the defendant's counsel as an authority in support of his positions. That case may have been well decided, if the defendant's charter contained a provision similar to that embraced in the 7th section of the act under which the plaintiffs in this case was incorporated, in relation to alienating the insured property. In the case referred to, the assured had sold the property insured, before the loss happened for which he was assessed, which the court held dissolved his relation with the company as a member, and consequently terminated his liability on his deposit note. It will be perceived, therefore, that it is not applicable to the present case.

The foregoing are among the considerations which have led me to the conclusion, that by a fair and correct interpretation of the 2d section of the act, persons insured in the company shall respectively remain members of the corporation during the time their policies, by their terms, are to continue; and that such membership is not terminated by a total loss of the property insured. This construction is no violation of the terms of the section, and is necessary, to avoid inconsistency with other sections, and in harmony with the scope and spirit of the whole act. I am therefore of the opinion that the judgment appealed from should be affirmed.

T. R. STRONG, J., concurred.

E. DARWIN SMITH, J. The second section of the act to incorporate the Jefferson County Mutual Insurance Company, which, by the terms of the act incorporating the Genesee Mu-

tual Insurance Company, of which the plaintiff is receiver, became part of its charter, (*Sess. Laws of* 1856, *ch.* 241, *p.* 318, *Id. ch.* 41, *p.* 421,) is as follows : "All persons who shall hereafter insure with the corporation, and also their heirs, executors, administrators and their assigns continuing to be insured in said corporation, as is hereinafter provided, shall thereby become members thereof during the period they shall remain insured by said corporation, and no longer." By the express terms of this section, one who insures in said corporation thereby *becomes a member thereof*, and during the period he shall remain insured, continues such member, and *no longer*. Section 6 provides, also, that "Every person who shall *become a member of said corporation*, by effecting an insurance therein, shall deposit his promissory note for such sum of money as shall be determined by the directors, before he receives his policy." Section 8 provides, that "Every *member of said company* shall be bound to pay for losses and such necessary expenses accruing in said company, in proportion to his deposit note." Section 9 provides, that "suits at law may be maintained by said corporation against any of *its members*, for the collection of such deposit notes or any assessments thereon," &c. Section 10 provides, that "After receiving notice of any loss or damage by fire, *sustained* by any *member*, and ascertaining the same, the directors shall settle and determine tho sums to be paid by the *several members thereof, as their* respective proportions of such loss, and publish the same, as they shall see fit, and the sum to be paid by *each member* shall always be in proportion to the original deposit note." "And if any *member* shall, for the space of thirty days after the publication of said notice, neglect or refuse to pay the sum assessed upon him, the directors may sue for and recover the deposit notes," &c. Thus it will be seen that all the provisions of the act relating to the liability to contribute to pay for losses, and to the maintenance of suits therefor, apply only to *members* of the corporation. It would seem to follow, as a necessary consequence, that when the relation of membership in the corporation ceases, the liability to contribute to pay for

losses incurred also ceases. Membership and the liability to pay for losses, or the relation of insurer and insured, are inseparable. They must coexist. When the property embraced in the policy of insurance issued to the defendant was destroyed by fire, he was thereafter "*no longer*" a *member* of the corporation. He ceased to be a member as much so as if he had sold or alienated the property. It is true that the charter, section 7, provides that "When any property insured by the corporation shall be alienated by sale, or otherwise, the policy shall thereupon be void." But this was entirely unnecessary. Such consequence would have followed in law without this express provision, for the contract of insurance is a contract to indemnify the insured against loss or damage to his property from fire, and when the property is sold or aliened or destroyed, the contract of insurance is necessarily at an end.

The theory of mutual insurance is, that each member agrees, concurrently with the other members, and in consideration of a like agreement as to himself, that he will assure each and every other member against loss by fire, and will contribute to pay all losses, while he continues thus insured, on his part. The assessments he pays are like the premiums paid by the insured in stock companies, and, in like manner as the duty to pay premiums in stock companies, ceases when the property insured is destroyed by fire, so the liability to pay assessments in mutual companies ceases for the same reason on a like destruction of the property insured.

The point, too, I think is expressly decided by the supreme court of the state of Pennsylvania, in *Wilson* v. *Trumbull Mutual Ins. Co.* (7 *Harris' Penn. State Rep.* 372.) That was a case of insurance upon goods, like the policy in this case, and the defendant had sold the goods some time before the loss happened for which he was assessed. The charter was much like the charter in this case. It was held that he was not liable for losses accruing after the sale of his goods. Judge Lowrie, in giving the opinion of the court, says: "In mutual insurance companies all the insured are members, and all members insured. If a member perform all his duties and pay

his share of all losses accruing during his *membership*, no more can justly be required of him, and if he does so his deposit note is thereby *canceled.* It cannot be used to enforce contribution for losses arising after he ceased to be insurer or insured."

When the defendant ceased to be a member of the Genesee Mutual Insurance Company, he clearly ceased to be liable for losses thereafter accruing.

The judgment should be reversed and a new trial had, with costs to abide the event.

Judgment affirmed.

[Monroe General Term, March 2, 1857. *T. R. Strong,* *Welles* and *Smith,* Justices.]