## TIPPETT v. WOOLLEY et al.
### No. 4689.

Court of Civil Appeals of Texas. El Paso.
Nov. 23, 1949.

Rehearing Denied Jan. 4, 1950.

Sedberry & Williams, Robert P. Amacker, San Angelo, for appellant.

Simmons & Jacobs, Corsicana, for appellees.

SUTTON, Justice.

This appeal is from the District Court of Crockett County. The suit, brought by Woolley and others, was in form trespass to try title, but the issue was purely one of boundary and involved the location on the ground of Survey 3, Block B in Crockett County, according to the original survey made by J. W. Armstrong, March 6, 1884. The case was tried to a jury and submitted on a single issue, which was: "Do you find from a preponderance of the evidence that Survey No. 3, Block B, is located on the ground as shown on map of John Klotz, being Plaintiffs' Exhibit 'O'?" The jury answered "Yes" and judgment was accordingly rendered for the plaintiffs from which the defendant has appealed.

The defendant requested a special instruction, which follows, and objected to the charge of the court because the instruction was not included therein. The instruction requested is as follows, to-wit:

"In answering the Special Issue No. 1, the law requires you to follow the footsteps of the Surveyor as shown by his field Notes; and by 'following the footsteps of the Surveyor' is meant finding the position on the ground of the lines and corners of the Survey from the description contained in the Field Notes; and in case any calls in the Field Notes are inconsistent with each other, so that it becomes necessary to determine which of said inconsistent calls are correct, and which are mistaken calls, the law permits a consideration of all facts in evidence showing the circumstances surrounding the surveyor at the time he made the survey and a determination from such surrounding facts together with the Field Notes themselves as to which calls, if any, were made by mistake; and such mistaken calls, if any, are to be disregarded in arriving at the true intention of the Surveyor.

"In Field Notes calling for position of a line or a corner of a survey to be at or near a natural object, or artificial object, or an unmarked line or corner of another survey, or course and distance from such object or line, the law deems a call for a

natural object, or artificial object found on the ground to be of the highest dignity; and next in the order of dignity is an unmarked line or corner of another Survey; and third in the order of dignity is course and distance, and last is the matter of area of the tract intended to be included in the survey. Any call, however, for any object or corner or line of another survey, if from a preponderance of the evidence such call appears to be a mistaken call, it is to be disregarded."

The defendant in eight points of error assails the action of the court in refusing the requested instruction and the verdict and judgment of the court, but we deem it unnecessary to set them out in any detail.

Only two witnesses testified, John Klotz, a State Licensed Surveyor, introduced by the plaintiffs, and James K. Avera, a likewise licensed Surveyor, offered by the defendant. There were various documents, numerous field notes and maps and plats introduced in evidence.

The Surveyors adopted different plans for the construction and location on the ground of Survey 3, Block B, which will more fully appear hereafter.

We reproduce below a portion of a working sketch supplied by the Commissioner of the General Land Office and used by each of the Surveyors in their work, which shows the Section involved and the immediate surrounding area.

Section 3, Block B, is one of four sections surveyed by J. W. Armstrong March 6, 1884. The other three are 1, 2 and 4, as shown on the plat heretofore attached. His purpose was to appropriate the vacant area between the previously surveyed area to the east and that formerly located and embraced in Block 36, H. & T. C. Ry. Co. to the west. Block 36, H. & T. C. to the west consisted of 22 square sections of 640 acres each and approximately the equivalent or 3 or 4 other such sections. Twenty of them were surveyed by M. J. Doyle April 28, 1873, as were 7 surveys in Block 35 to the west, the total number shown on the sketch. The surveys to the east were surveyed by Barton, Bonnell and Thomson and consist of 12,640 acre sections, including Section 1, Block B, surveyed by Armstrong, other than Block 14, University of Texas. It may here be noted that Section 1, Block B by Armstrong has never been corrected but stands as originally surveyed. 2, 3 and 4 were corrected in 1927, as shown on the plat, by Estes.

The surveys in Block 36 H. & T. C. were corrected in May, June and July, 1888, by M. W. Nyland. Nyland went into the area to check, correct and mark on the ground lands previously surveyed. The original field notes by Doyle in Block 36 call for stakes only. The field notes made and filed by Nyland in 1888, contain many bearings and definitely locate the lands on the ground. He reduced the northern boundary of Section 26 from 1900 vrs. to 821 vrs. and the distance between the north line of 26 and the north line of Section 37, Block 31 (River Block) from 2210 vrs. to 1161 vrs. Mr. Avera testified this is a mountainous country and in his opinion it was impossible to have made the survey and placed the stakes in Block 26 as called for in Boyle's original field notes. He regarded it as an office survey. There could be little doubt, if any, about that. He was likewise of the opinion Armstrong did not survey on the ground the four surveys purporting to have been made by him March 6, 1884.

Armstrong's original field note calls for his surveys 1, 2, 3, and 4 are in order as follows:

Survey 1, "Beginning at a stake on N. W. Cor. of Sur. No. 3, and 3800 vs. west of N. W. cor. of No. 17 for State University B. Thence South 1900 vs. to a stake for S. W. cor. No. 3.

Thence West 1900 vs. N. W. cor. 2.

Thence North 1900 vs. to a mound on S. W. cor. of Nancy E. Everett Survey.

Thence East 1900 vs. to the place of beginning."

Survey 2, "Beginning at a stake the N. E. corner of this survey, on E. line of No. 1 of this block, and 789 vs. South of the N. W. cor. of same.

Thence West 895 vs. to a stake for corner.

Thence South 1757 vs. to a stake on S. E. corner of Survey No. 4 of this block.

Thence West 98 vs. to a stake for corner, on south line of same.

Thence South 1672 vs. to a stake for S. E. corner, Sur. No. 3, of this block.

Thence West 1289 vs. to a stake S. W. cor. same.

Thence South 174 vs. to a stake for corner.

Thence East 2282 vs. to a stake for corner.

Thence North 3603 vs. to the place of beginning."

Survey 3, "Beginning at a stake set 1078 vrs. S. 50 E. from East corner of Sur. No. 26 in Block 36 H&TC Ry. Co. also a N. W. cor. of Survey No. 2 of this block.

Thence East 1289 vs. to a stake an interior cor. of Sur. No. 2 of this block.

Thence North 1672 vs. to a stake on S. line of Sur. No. 4 of this block.

Thence West 2365 vs. to a S. W. cor. of No. 4 stake on S. E. line No. 24, B. 35 H&TC Ry. Co.

Thence S. 40 W. 589 vs. to N. E. Cor. No. 26.

Thence S. 50 E. 1900 vs. to the place of beginning."

Survey 4, "Beginning at a stake the East corner of Survey No. 22 Block No. 35 for H&TC Ry. Company.

Thence S. 40 W. 3831 vs. to a stake on N. W. cor. No. 3 of this block on the S. E. Line of Sur. No. 24 B. 35 for H&TC Ry. Company.

Thence E. 2463 vs. to a stake, an interior cor. of Sur. No. 2 of this block.

Thence North 2935 vs. to the place of beginning."

Survey No. 2, Block B, as originally surveyed not exactly but generally took the position of Survey No. 8, Block PP as shown on the attached plat. Armstrong on May 27, 1884, corrected the field notes for Survey No. 2 and moved it much further North. The corrected field notes are as follows:

"Beginning at a stake the S. E. cor. No. 6 by virtue of Cert. #5000 and the N. W. cor, Nancy Evett Sur.

Thence S. 3461 vrs. to a stake for cor. on West line of Sur. No. 1 this block.

Thence West 603 vrs. to a stake for cor. on East line of Sur. No. 4 this Blk.

Thence North 1910 vrs. to a stake the N. cor. said Sur. No. 4 and the East Cor. of Sur. No. 22 Blk 36, H & T.C.R.R.

Thence North 50 W. 2340 vrs. to a stake the S. W. cor. Sur. No. 5, Cert. 5000 GC & SF R.R.

Thence East 879 vrs. stake for S. E. cor. same.

Thence South 273 vrs. to a stake the S. W. cor. Sur. No. 6 Cert. #5000, G.C. & S.F.R.R.

Thence East 1900 vrs. to the place of beginning."

Mr. Klotz for the plaintiffs disregarded all other calls and for his location of Survey 3, Block B, the survey in controversy, started at the extreme west corner which is also the northwest corner of Survey No. 26, Block 36, as fixed and identified by Nyland in 1888. He ran the lines around according to the original field note calls, picking up two or three marked corners. The evidence justifies the conclusion the marked corners were established by Estes March 28, 1927, when he corrected the field notes for Survey 3. He assumed for the purpose of his survey the locations made by Nyland in 1888, were the same as when Armstrong made his locations in March 1884. The facts hardly justify the assumption.

Mr. Avera for the defendant disregarded the calls for adjoinder with the Block 36 Surveys as located by Nyland, and went to the Southwest corner of Section 15, University of Texas Block 14 and ran three miles north to the Northwest Corner of Survey 17, University. From this point he ran 3800 vrs. west to the Northwest corner of Survey 3, the beginning corner of Survey 1. From this point he ran out the four surveys, putting No. 2 in the position called for in its original field notes of March 6, 1884, according to their calls other than the adjoinder calls for Block 36, and also Survey No. 2 according to its corrected field notes. When surveyed by Mr. Avera's method Survey 3 moves north from the location made by Mr. Klotz about its width, approximately 1672 vrs. and west about 417 vrs. Survey 15, University Block 14, calls to begin "at the S.W. Corner of Survey 14 (same block) earth md. Thence west 1900 vs. Stone and earth md. 6 ft. at base and 3 ft. high." Earth mounds are called for at the other corners. The large earth mound is still there. Mr. Klotz testified it is a marked original corner; that Armstrong located Survey 1 from that corner and the location is accepted as correct and if all calls for adjoinder in each of 1, 2, 3 and 4 are respected they will "jibe together" and the north corner of 4 and northeast corner of 22, block 36, would be 1553 vrs. north of the Northeast corner of Section 22, Block 36, as located by Nyland in 1888. He testified further, of course, the calls for adjoinder of the four surveys must be disregarded to effect the location made by him.

Plaintiffs sued to recover the area as surveyed by Mr. Klotz, describing it by metes and bounds and further as "being the same identical tract of land patented to R. M. Thomson, Assignee of the G.C. & S.F. Ry. Co., and being also the same identical land described in original Field Notes made by J. W. Armstrong, Deputy Surveyor and H. B. Tarver, Surveyor, Tom Green County, Texas, on March 6, 1884, on file in the General Land Office of the

State of Texas, to which reference is made." Survey 3 was patented February 9m 1885, on substantially the Armstrong original field notes.

The issue and question in this case is, "Where did Armstrong locate, or intend to locate, Survey 3, Block B, March 6, 1884 on the ground?" It is thought the issue submitted to the jury did not comprehend that inquiry. The jury might. and could have well disregarded Armstrong's location and answered as they did, because Estes in 1927 corrected the field notes for 3 and 4 and located them according to the fixed locations on the ground made by Nyland in 1888, for the whole of Block 36, including Surveys 22, 23, 24 and 26. There is nothing in the record to indicate Estes undertook to locate 3 as a part of the system to which it belonged having regard for the calls for adjoinder with the other surveys 1, 2 and 4 as made by Armstrong, or to do anything more than to make the best he could of a bad situation. Apparently Goodfellow adopted the location made by Estes and Klotz likewise did the same thing. The argument is made here, and was probably made to the jury, the location has been recognized for 61 years. When applied to the Nyland locations of Block 36 the statement is correct, but the same is not applicable to Survey 3, because Nyland did not undertake to relocate and correct its field notes. Apparently that was done by Estes as heretofore pointed out. The Estes location appears on the working sketch and our attached plat as well, which is taken from the sketch.

We revert to our former statement the facts hardly justify the assumption Armstrong located 3 as the same is located by Klotz according to the Nyland fixed locations. When Armstrong made his field notes for 1, 2, 3 and 4, Block B, including the originals and corrected notes for 2, Doyle's locations were not identified on the ground. Doyle located Survey 26, Block 36, at least 1049 vrs. north of the Nyland location and as located by his reduced lines. As heretofore noted, Nyland reduced the north line of 26 from 1900 vrs. to 821 vrs. and the length of the east line from 2210 vrs. to 1161. So far as the record discloses the dimensions and acreage in the other surveys were not altered. If any adjustments were made with respect to the River surveys, other than 26 as noted, it does not appear in the record. Armstrong could not have respected the location of 26 made by Doyle and put 3 where Klotz locates it with respect to 37, Block 31.

Armstrong put Survey 1 in a vacant spot pretty well fashioned for it with three sides already fixed and it has never yet been altered or changed and cannot be, except to tear it away from its adjoiner calls and create a vacancy, and disregard all its field note calls. But its immovable location, as we understand it, is conceded. As heretofore indicated and by reference to the original field notes of Survey 2, Number 2 originally took pretty much the position given 8 PP on the sketch and that it was moved north to the position given by the corrected field notes. The original position was in conflict with 8 PP, originally surveyed as square section of 640 acres lying immediately west of 7 PP. Armstrong in his corrected field notes for 2 called to begin at its northeast corner, a common corner of 6 to the north and the Everett survey east and to run "thence S. 3461 vrs. to a stake for cor. on East line of Sur. 1 this block. Thence West 603 vrs. to a stake for cor. on East line of Sur. 4 this block. Thence North 1910 vrs. to a stake the N. cor. said Sur. No. 4 and the East cor. of Sur. No. 22 Blk. 36, H. & T. C. R. R. In other words, Armstrong located the north corner of 4 and the northeast corner of 22, Block 36 (which is the Northeast corner of Block 36) 1553 vrs. further north than does the Estes corrected field notes. That is, Armstrong placed the North Corner of 4 and the Northeast corner of 22, 1910 varas north of the Southwest corner of 2, rather than 357 varas north therefrom as fixed by Estes in 1927, and as is shown on the plat attached and the sketch from which it is taken. To put it another way, Armstrong's line AB as shown on our plat is 1910 varas, whereas Estes' is 357 varas.

Bonnell corrected his field notes for Survey 8, Block PP which changed it from a

square survey of 640 to one irregular in form. The corrected notes are:

> "Beginning at a stake 524 vs. North of SW corner of Sur. No. 7 this Certificate.
>
> Thence North 3615 vs. to a stake cor. on West line of Sur. No. 1 G. C. & S. F. Ry. Co.
>
> Thence West 603 vs. W. line of Sur. No. 4 stk.
>
> Thence South 1026 vs. stake a cor. of Sur. No. 4.
>
> Thence West 97 vs. stake a cor. of Sur. No. 3.
>
> Thence South 1672 vs. stake on SE cor. Sur. No. 3.
>
> Thence West 1289 vs. stake on a cor. of Sur. No. 3.
>
> Thence South 917 vs. stake.
>
> Thence E. 1989 vs. to the place of beginning."

Bonnell in this relocation of 8 PP recognized the position given the south line of corrected 2 and the northernmost position given No. 4 and Sec. 22, Block 36, and respected the location of the south line of No. 3, Block B, 1442 varas north of the north line of Survey 12 PP, rather than in conflict with 12 PP as surveyed by Estes, Goodfellow and Klotz.

The official Land Office Map of 1894 gave No. 3 an undetermined location, but the tentative position accorded it was far north of the tentative position of 12 PP, as were the positions of 22, 23, 24 and 26, Block 36. The Land Office map compiled in 1901, and revised and copied in November 1920, gave the position of No. 3 and 8 PP about where their field notes called for them to be with the south line of 3 and north line of 8 as common, and north of 24 and 26 as located by Nyland. An undated map likewise places No. 3 and as well No. 4 and 22, 23 and 24 in about if not the same position given them by Armstrong and as apparently recognized by Bonnell. The official map of 1917 gives a like position to No. 3. It was not until after the Estes survey and correction of field notes for 2, 3 and 4, Block B, and of 8 PP, in 1927, that the position given No. 3 by

Estes, Goodfellow and Klotz was recognized on the maps and plats of the area, so much position for No. 3 has not been recognized for a period of 61 years as is true of the Nyland locations for 22, 23, 24 and 26, Block 36.

It is the location made by Armstrong in 1884, that is material and controlling, and nothing Nyland did in 1888, or Estes in 1927, nor anything subsequently done can alter or change what Armstrong did. It is clear and true Nyland altered the position and changed the dimensions of 26. Whether he left the other surveys in Block 36 where Doyle located them or adjusted them to the river surveys as he did 26 does not appear. It is apparent, however, Doyle's locations were not marked and identified on the ground. No. 1, Block B, was the only one of the four surveys located from a known, established and monumented corner, and recognized at all times to this date, that is, the Southwest Corner of Section 15, Block 14, University of Texas. It is perfectly clear also that Armstrong from the information available to him, the Doyle survey, located the Northeast Corner of Sec. 22 and Northeast Corner of the Block 36, 1553 varas north of the Estes Southwest Corner of corrected Survey No. 2. In this location there are no conflicts between the calls, and the calls for adjoinder with 22, 24 and 26, Block 36, completely harmonize. It cannot be said from this record the location thus made by Armstrong is erroneous. All that may be said is that the calls for adjoinder do not harmonize with the altered position of 26 and the position subsequently fixed by Nyland, for Block 36. Where Armstrong put, or intended to put, if his survey were an office survey, the north corner of No. 4 and the Northeast corner of Sec. 22 and the Block is as definitely fixed as it could well be by the record. In our opinion the record does not suggest a mistake or error, and consequent mistaken calls for adjoinder with the surveys in Block 36. If such an error and mistaken calls did appear it could have no effect and the calls for adjoinder, ordinarily controlling over course and distance, would have to yield to the unmistakable calls here for course

290

and distance. State v. Sullivan, 127 Tex. 525, 92 S.W.2d 228, 235, (T) and the cases there cited.

■ It has already been pointed out Survey No. 1, Block B, remains untouched and unmoved and that its original and only position ever given it is recognized as correct and fixed. Surveys 1, 2, 3 and 4 are a system of surveys and as such are not to be treated as separate and individual surveys; nor can each tract be located independently of the rest, by its own individual lines or calls or courses and distances, but such surveys are to be located together as one block or large tract. Standefer v. Vaughan, Tex.Civ.App., 219 S.W. 484, 489; Beck v. Gulf Production Co., Tex.Civ. App., 113 S.W.2d 258, e. r.; Duval County Rancho Co. v. Rogers, Tex.Civ.App., 150 S.W.2d 880, e. r.

In other words, Survey No. 3 may not be cut loose from any and all the other surveys in the block or system and constructed from the calls for adjoinder with the Block 36 surveys as fixed by Nyland when by the record their location at best was uncertain in 1884, when Armstrong located his surveys.

■ As we have already pointed out the issue to be determined in the law suit was not clearly submitted to the jury. If there be an issue of fact for the jury it was essential that they be instructed that Armstrong's location is controlling and that they must locate the survey on the ground as he located it or intended to locate it, and not be left free to adopt a location as made by some subsequent surveyor unless the same agrees with the Armstrong location. It is our conclusion the unexplained issue and duty of the jury was error and the consequent verdict and judgment under the record likewise erroneous.

■ The record offers little hope for a location different from that made by Mr. Avera but we are uncertain as to whether or not all the facts have been fully developed and have concluded the case should properly be reversed and remanded rather than rendered, and the case will accordingly be reversed and remanded.